UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:12-CR-53 |
| | ) | (VARLAN/GUYTON) |
| YASHAN TRECE CAMPBELL, | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This criminal matter is before the Court for consideration of the Report and Recommendation, entered by United States Magistrate Judge H. Bruce Guyton on December 27, 2012 (the "R&R") [Doc. 61]. The R&R addresses the defendant's motion to suppress [Doc. 50] in conjunction with co-defendant Tyrone Cortez Cobb's motion to suppress [Doc. 36]. After a hearing on the motions, the magistrate judge granted the defendants' request for leave to file post-hearing briefs. Both defendants filed post-hearing briefs and the government responded. The magistrate judge took the motions under advisement and then entered the R&R, recommending that the motions be denied. The defendant filed objections to the R&R [Doc. 63], and the government responded [Doc. 72].[1]

---

[1] Co-defendant Cobb did not file any objections to the R&R within the time afforded for him to do so. For this reason, and in light of his guilty plea, the Court accepted in whole the R&R as it pertained to him on the record during his change of plea hearing [*See* Doc. 73]. Hence, while the R&R pertained to both defendants, this memorandum and order pertains only to defendant Yashan Trece Campbell.

## I. Relevant Background

The defendant is charged with one count of felony possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) [Doc. 1]. The charge stems from a December 9, 2011 stop and search of co-defendant Tyrone Cortez Cobb's vehicle. Magistrate Judge Guyton, after a hearing and considering the parties' positions, made the following findings of fact:

> A few days before December 9, 2011, Officer Mattina saw Defendant Cobb driving a Chevrolet Caprice on Summit Hill in Knoxville, Tennessee. Officer Mattina checked Defendant Cobb's driver's license and found that it had been suspended. At that time, Officer Mattina did not stop Defendant Cobb because he was answering a dispatched call, which took priority.
>
> On December 9, 2011, while on patrol, Officer Mattina saw Defendant Cobb driving around the Cumberland Avenue area in a Chevrolet Caprice. Officer Mattina checked Defendant Cobb's driver's license again and found that it was still suspended. In addition, a NCIC check revealed that Defendant Cobb had an outstanding arrest warrant for felony theft. Due to Defendant Cobb's violent history with police officers, Officer Mattina radioed several officers to help him initiate a traffic stop. The other officers coordinated the "felony stop position." Officer Mattina pulled Defendant Cobb over in the Krystal's parking lot at 9:43 p.m., ten minutes after he checked the NCIC database.
>
> Officer Mattina approached the driver's side of Defendant Cobb's vehicle, asked Defendant Cobb to step out, and immediately arrested him. While Officer Mattina was arresting Defendant Cobb, Sergeant Offenbacher pulled into the parking lot in order to assist Officer Mattina.
>
> After placing handcuffs on Defendant Cobb, Officer Mattina conducted a search incident to the arrest and found 1.5 to 1.7 grams of marijuana, a rock consisting of 1.5 to 1.7 grams of crack cocaine, and two cell phones on Defendant Cobb's person. Defendant Cobb

> was then placed in the back of a police cruiser. Officer Mattina became concerned that there were weapons in the vehicle because he did not know the other occupants in the vehicle. Without administering Miranda warnings, Officer Mattina asked Defendant Cobb whether there were any weapons in the vehicle. Because Defendant Cobb did not say "no," Officer Mattina continued to question about the presence of weapons. Defendant Cobb shrugged his shoulders and made other non-verbal communications, which led Officer Mattina to believe that there were weapons in the vehicle.
>
> Officer Mattina signaled to Sergeant Offenbacher to coordinate safety positions. The officers made the three remaining passengers in the vehicle exit. They were all patted down for weapons but nothing was found. Several of them were placed in handcuffs. After the passengers were secure, Officer Mattina returned to the vehicle. While standing beside the driver's side mirror, Officer Mattina saw a partially hidden handgun underneath the driver's seat. Officer Mattina did not touch the gun but told Sergeant Offenbacher that there was a gun underneath the driver's seat. Sergeant Offenbacher then searched the backseat and found another gun. After finding two guns in the vehicle, Officer Mattina and Sergeant Offenbacher stopped searching and called the crime lab to assist in the search, obtain fingerprints, and take photographs.
>
> The crime lab arrived and continued the search. Ultimately, the search revealed three loaded guns. The forensics team took photographs of the scene and took the guns to confiscations. The passengers were then taken to the Repeated Offenders Unit.

[Doc. 61]. The defendant does not object to these findings of fact and the Court accepts these findings of fact.

On the basis of these facts, Magistrate Judge Guyton found that Officer Mattina had probable cause to believe that Cobb was committing the crime of driving without a valid license and that he had a warrant for his arrest on December 9, 2011, and thus properly stopped Cobb's vehicle and placed Cobb into custody. He further found that

3

the plain view and automobile exceptions to the search warrant rule applied to provide probable cause to search the entire vehicle.

## II. Standard of Review

As required by 28 U.S.C. § 636(b)(1) and Rule 59(b) of the Federal Rules of Criminal Procedure, the Court has undertaken a *de novo* review of those portions of the R&R to which defendant has objected. In doing so, the Court has carefully considered the R&R, the parties' underlying and supporting briefs, the defendant's objections, and the government's response to the objection, all in light of the relevant law.

## III. Analysis

While most of the defendant's filing in response to the R&R is a reiteration of points made before the magistrate judge, the Court is able to discern one objection: the government failed to introduce a copy of the warrant showing the date of issuance and county of origin that formed the basis of the magistrate judge's determination that the stop and search was reasonable [Doc. 63]. The Court finds this objection is without merit. It is of little consequence that the government did not introduce a copy of the warrant that Officer Mattina was made aware of on December 9, 2011, because it is undisputed that Cobb had a warrant for his arrest. Moreover, the government introduced proof that Officer Mattina checked defendant Cobb's name in the NCIC database minutes before the stop, which confirmed that his license had been suspended and that a warrant had been issued for his arrest. Accordingly, the Court will overrule the defendant's objection.

## IV. Conclusion

After reviewing the record in this case, including the R&R and the underlying briefs, as well as the relevant law, the defendant's objection to the R&R, and the government's response to the defendant's objection, the Court determines that the magistrate judge fully and appropriately considered the arguments in support of the motion to suppress. Further, the Court agrees with the magistrate judge's analysis and findings in their entirety. Accordingly, and for the reasons stated above, the Court **OVERRULES** the defendant's objection [Doc. 63], **ACCEPTS IN WHOLE** the R&R [Doc. 61], and **DENIES** the defendant's motion to suppress [Doc. 50].

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE